## No. 22029.

KLAMM SHELL AND RICHARD KLAMM *v*. ARLENE BERG, AKA ARLENE LALONICA, AKA ARLENE ALGIEN.
(441 P.2d 10)

Decided May 13, 1968.    Rehearing denied June 10, 1968.

SEAVY & SEAVY, for plaintiffs in error.

FUGATE & MITCHEM, WILLIAM E. KENWORTHY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THIS is a personal injury case arising from an alleged assault and battery committed by Richard Klamm, the owner of the Klamm Shell, a tavern in the City of Pueblo, against the person of Arlene Berg who was employed as a waitress and barmaid at the Klamm Shell. The plaintiffs in error, Klamm Shell and Richard Klamm, will be referred to herein in the singular, as the defendant.

The case was tried to a jury which returned a verdict for the plaintiff Arlene Berg and assessed her damages in the amount of $10,000. From a judgment in this amount, the defendant brings this writ of error on the sole issue of whether the one year statute of limitations barred recovery on the assault and battery claim of the plaintiff, Arlene Berg.

In reply to the defendant's answer setting up the statute of limitations as a defense, the plaintiff averred that the defendant was estopped to rely on the statute as a defense because the plaintiff, as the result of her injuries from the assault, had been rendered insane and she was therefore prevented from filing the action within one year.

The alleged assault and battery occurred on February 14, 1954, however, the action was not commenced until late April 1955. A second alleged assault and battery by the defendant Richard Klamm on the person of the plaintiff took place on August 11, 1954, however, as claimed by the defendant, the evidence failed to show any compensable injuries suffered by the plaintiff as a result of the August 11, 1954 incident. For the purpose of this opinion, no critical significance will be given to the second alleged assault and battery. The evidence reveals serious injuries to the plaintiff requiring hospitalization and surgery as a result of the February 14, 1954 occurrence. It was also shown that the plaintiff became mentally incapacitated as a result of her injuries; that this condition commenced approximately in June 1954 and continued through February 14, 1955 and to at least April 20, 1955.

Premised upon the above evidence, the trial court gave Instruction No. 12B to the jury:

"You are instructed that the defendant's defense, based upon the one year statute of limitations, will be overcome if you find from the evidence that the plaintiff was not mentally competent to manage her affairs on

February 14, 1955, and that such disability continued to at least April 20, 1955.

"If you so find, then you may give full consideration to plaintiff's charges involving the alleged assault of February 14, 1954."

The one year statute of limitations referred to in Instruction No. 12B is C.R.S. '53, 87-1-2 which in pertinent part provides:

"All actions for assault and battery . . . shall be commenced within one year after the cause of action shall accrue, and not afterwards."

The only statutory exception to the application of the foregoing statute of limitations is C.R.S. '53, 87-1-19, which in part provides:

"*Persons under disability.*—If any person entitled to bring any action mentioned in this article, is . . . insane . . . , *at the time when the cause of action accrues,* such person may bring said action, within the time in this article respectively limited, after the disability is removed." (Emphasis added.)

A brief resume of the plaintiff's evidence of the assault and battery — obviously believed by the jury — and of her injuries, medical treatment and mental incapacity, is necessary for a full understanding of the premise upon which the trial court determined that an exception to the operation of the statute of limitations existed. Obviously, such an exception can only be found by the application of equitable principles, since our statutory law does not include such an exception.

The plaintiff while employed at the Klamm Shell tavern on February 14, 1954 was struck by the defendant, who at the time was drunk and otherwise abusive toward the plaintiff. As a result of the striking by the defendant, the plaintiff fell to the floor and struck her head against a beer cooler behind the bar. The fall and blow to the head rendered the plaintiff unconscious for an undetermined period of time. She later recovered sufficiently to be able to take a taxi to the home of a

friend. Because of severe headaches, dizziness, and visual difficulties, she was hospitalized first in Pueblo and thereafter in Denver. It was determined that she had sustained a subgaleal hematoma. Surgery which was described as a craniotomy was performed and later she was subjected to another operation for removal of the bone flap caused by the craniotomy. After being released from the Denver hospital, the plaintiff continued to suffer from severe headaches. Considerable amounts of medicine were prescribed and she underwent a number of treatments and examinations. The plaintiff's condition improved to a point which enabled her to return to the Klamm Shell tavern where she was reinstated as an employee on a short hour basis just prior to August 11, 1954. On this date, the defendant assaulted her again by kicking from beneath her a small stool on which she was standing. This also caused unconsciousness.

Medical testimony indicated that as a result of the brain damage which the plaintiff suffered as a consequence of the assault and battery on February 14, 1954, she became insane and mentally incompetent in June 1954. In October 1956, she was committed as a mental incompetent to the State Hospital at Pueblo where she remained for about three years. During the medical testimony, it was also revealed that a future operation would be advisable for the purpose of inserting a protective plate in the cranial area where a section of the skull had been previously removed by the surgical procedures.

The statutory exception as defined in C.R.S. '53, 87-1-19 is not applicable to the facts before us. It requires that insanity exist "at the time when the cause of action accrues" before the statute of limitations can be tolled. Here, however, the mental incompetency arose after the time when the cause of action accrued. It is the defendant's position that once a statute of limitations begins to run it cannot be arrested or suspended by a

subsequent disability, even though the disability was caused by the intentional tort of the person who seeks to bar the claim of the disabled person by the application of the statute. We do not agree. To uphold the defendant's contention in this case would, in our view, be unconscionable and would violate basic equitable concepts, which may be invoked by trial courts when confronted with facts which impel equitable treatment. Under the facts here presented, we hold that equity contains within its purview overriding concepts which proclaim that a defendant on the basis of plain justice should not be allowed to rely on a statute of limitations, where his intentional tort has caused mental incapacity arising after the cause of action accrued but before the expiration of the period of limitation.

In support of this reasoning, the plaintiff cites *Browne v. Smith*, 119 Colo. 469, 205 P.2d 239 and *Warren v. Adams*, 19 Colo. 515, 36 P.604. We have examined these cases with utmost care. Both treat the subject of tolling the respective statutes of limitation involved because of insanity. However, it is not clear from either of these cases whether the insanity arose before or after the cause of action accrued, and there is no clear pronouncement that other than statutory exceptions were applied. Hence, we choose to treat the question at hand as one of first impression in this state.

However, in other justifiable fact situations, we have applied exceptions to override adherence to the strict application of statutes of limitation. In *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372, the defendants had concealed from the plaintiff the existence of a cause of action during the time that the period of limitations was running. Under these circumstances, this Court stated that one may not be permitted to take advantage of his own wrong, and we therefore held that the alleged cause of action was not barred by the statute of limitations relied upon by the defendants. See also *Greeley Gas and Fuel Company v. Thomas*, 87 Colo.

486, 288 P.1051 wherein a compensation claimant's employer and the insurance company encouraged him to pursue a negligence action against a third person of doubtful solvency and from whom he was unable to recover a judgment. He then filed a workmen's compensation claim, and the employer and insurance company sought to have the claim barred because he had not served a notice of claim within one year after the accident as required by the applicable statute. It was held that the employer and the insurance company were estopped to rely on a one-year statute of limitations under these circumstances.

*Kyle v. Green Acres at Verona, Inc.,* 44 N.J. 100, 207 A.2d 513 presents a situation somewhat similar to the facts involved in the case before us. Because of the negligent act of the defendant, the plaintiff was injured to an extent which caused insanity and because of this, a cause of action was not initiated until after the applicable statute of limitations had run its course. Under these facts, it was held that the defendant should not be permitted to cloak himself with the protective garb of the statute of limitations. In our view, this rationale becomes particularly compelling if applied to facts involving an intentional tort rather than mere negligence as was the case in *Kyle.*

As stated in *Rosane, supra,* a statute of limitations is enacted for the purpose of promoting justice, discouraging unnecessary delay and forestalling the prosecution of stale claims. To apply the one year statute of limitations rigidly to a situation where a plaintiff is rendered insane as a result of an assault and battery which condition prevents a timely filing of an action against the intentional tortfeasor would result in callous injustice. Therefore, rather than promoting justice, the statute of limitations would then become an effective instrument for injustice. When this situation occurs, trial courts properly may turn to estoppel or fashion an equitable exception to the statutory limitation period.

■ We hold that the trial court did not err in its determination that the facts here required an exception to the application of the one year statute of limitations.

As cross error, the plaintiff urges that the amount of damages assessed by the jury was grossly inadequate and that the trial court should have granted the plaintiff's motion for a new trial on the question of damages only.

■ We have examined this record with utmost care. The evidence of damages presented during the course of the trial is not of such character as would enable us to state, as a matter of law, that the damages are so grossly inadequate as to require a new trial on this issue alone.

Judgment affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.